## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT RAMELLI ET AL.**                         **CIVIL ACTION**

**VERSUS**                                        **NO. 20-1482**

**BEN ZAHN ET AL.**                               **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Preliminary Injunction (Doc. 8). A hearing on the Motion was held on June 16, 2020. For the following reasons, the Motion for Preliminary Injunction is **GRANTED**.

## BACKGROUND

This matter arises out of a trash collection contract dispute between Plaintiffs, Ramelli Janitorial Service, Inc. ("Ramelli Janitorial") and its owner, Robert Ramelli ("Ramelli"); and Defendants, the City of Kenner ("Kenner" or "the City") and its Mayor, Ben Zahn ("the Mayor"). On December 17, 2015, the Kenner City Council passed an ordinance approving a 10-year contract with Ramelli Janitorial for the collection and transportation of garbage and trash within the corporate limits of Kenner.[1] The contract required Ramelli Janitorial to purchase, distribute, and maintain rollout carts to 22,000 Kenner

---

[1] Doc. 8-2 at 17.

residents for curbside collection.[2] The contract provides that the City may terminate the contract upon 180 days written notice.[3]

Sometime in January 2020, Mayor Ben Zahn informed Mr. Ramelli that he intended to explore options with another vendor for the performance of services that Ramelli Janitorial was obligated to perform under the contract. At some point, the Mayor reached an agreement with IV Waste, LLC ("IV Waste") for the services.

On February 21, 2020, a proposed ordinance to approve the City's new potential trash collection contract with IV Waste was introduced at a Kenner City Council meeting.[4] The ordinance was approved by the City Council on March 5, 2020.[5]

On March 31, 2020, the City Attorney sent Plaintiffs a letter, which stated:

> [T]he City of Kenner has elected to contract with another party to provide for any and all of the work/services Ramelli Janitorial Services, Inc. was providing. Effective May 1, 2020, Ramelli Janitorial Services, Inc. shall cease the collection of municipal solid waste and recycling for the City of Kenner. This is a stop work notification, not a cancelling or termination of the contract.[6]

The interactions between the parties begin to devolve from here, and the following timeline is critical for this Court's analysis.

On April 8, 2020, Sidney Torres, IV ("Torres"), the owner of IV Waste, released a video advising Kenner residents that IV Waste would begin trash collection on May 1, 2020 and that residents should continue to use their old Ramelli Janitorial rollout carts while they await delivery of the new IV Waste

---

[2] *Id*. at 18–19.
[3] *Id*. at 52.
[4] Doc. 8-4 at 4.
[5] Doc. 8-5 at 3.
[6] Doc. 8-2 at 76.

2

rollout carts.[7] Torres further instructed citizens to contact the IV Waste office if they did not receive a new rollout cart by June 1.[8]

On April 23, 2020, certain Kenner citizens[9] filed a lawsuit ("the Citizen Suit") against the City alleging that the new contract with IV Waste was not passed in accordance with the Kenner Home Rule Charter.[10]

On April 24, 2020, the City Council held a special session to adopt a resolution affirming the March 23, 2020 contract with IV Waste.[11] At this special session, the city attorney noted that the resolution was without force of law.[12]

On April 30, 2020, Ramelli Janitorial filed a lawsuit for breach of contract against the City in the 24th Judicial District Court for the Parish of Jefferson ("the Breach of Contract Suit").[13]

On May 1, 2020, IV Waste began trash collection for the City. Defendants acknowledge that the trash was collected from "a variety of different garbage cans, some provided by IV [Waste], some purchased by residents, some provided by Ramelli [Janitorial], and some provided by garbage vendors prior to Ramelli [Janitorial]."[14] Additionally, the City of Kenner released a Facebook post instructing residents "who have received the IV Waste garbage containers [to] use those; however, the Ramelli containers can be used until all IV Waste containers have been distributed, a process that will be completed by June 1."[15]

---

[7] Doc. 8-16 (manual attachment).

[8] *Id.*

[9] The plaintiffs in the Citizen Suit are Sam Capitano and Melissa Peralta. *See* Doc. 8-7. Counsel for plaintiffs in the citizen suit and counsel for Plaintiffs in the instant matter are the same. *Id.*

[10] Doc. 8-7.

[11] Doc. 8-7 at 19.

[12] *Id.*

[13] Doc. 8-11. Plaintiffs aver that this lawsuit is still pending. Doc. 8-1 at 6.

[14] *Id.*

[15] Doc. 8-2 at 77.

On May 4, 2020, counsel for Plaintiffs emailed the Kenner city attorney about Ramelli Janitorial's 22,000 rollout carts, asking the city attorney to "[p]lease confirm that your instruction is for Ramelli to remove its roll-out carts."[16]

On May 5, 2020, the city attorney replied:

> As to the 22,000 plus roll-out carts and recycling bins, under the contract they belong to Ramelli. The City has always presumed that Ramelli would want to collect its property. If it is Ramelli's desire to pick them up, the City will be glad to put out notices to the residents telling them when the roll-out carts and recycling bins will be picked up by Ramelli so that the roll-out carts and recycling bins will be curbside. Just let me know.[17]

Plaintiffs aver that, upon receipt of this authorization from the city attorney, they "immediately commenced planning for the pick up of the 22,000 garbage carts."[18]

Also on May 5, the parties in the Citizen Suit entered into a consent judgment.[19] The consent judgment permitted IV Waste to continue its trash collection in the City, but at the same rate that Ramelli Janitorial had previously charged, until "such time as a judgment is entered on plaintiffs' request for a preliminary injunction and/or IV Waste, LLC and the City of Kenner enter into a contract approved by an ordinance adopted in compliance with . . . the Kenner Home Rule Charter."[20]

On May 7, 2020, Ramelli Janitorial filed a suit against IV Waste in the Civil District Court for Orleans Parish seeking injunctive relief and damages in connection with IV Waste's use of Ramelli Janitorial rollout carts when it

---

[16] Doc. 8-15 at 6.
[17] *Id*. at 5 (emphasis added).
[18] Doc. 8-1 at 8.
[19] Doc. 8-8.
[20] *Id*.

began its trash collection on May 1 ("the Conversion Suit").[21] The court heard argument on Ramelli Janitorial's motion for a temporary restraining order ("TRO") the same day. The Court granted a TRO, finding that IV Waste's use of Ramelli Janitorial rollout carts was without authorization and enjoined IV Waste from "using, accessing, or interfering with any and all Ramelli owned roll-out carts, dumpsters, or other garbage containers."[22]

After learning of the TRO, the city attorney for Kenner sent a letter to counsel for Plaintiffs on May 7, 2020, stating:

> The City of Kenner has been advised that Ramelli has filed for and received a temporary restraining order prohibiting IV Waste from picking up garbage that is accumulating in the City of Kenner in cans that belong to Ramelli. . . . Your client was authorized on Tuesday [May 5, 2020] at 9:16 AM to pick up the roll-out carts that belonge [sic] to your client. Your client has not picked up or started to pick up the roll off carts and as a result of this failure and the alleged temporary restraining order has now created a health emergency. . . . [Y]ou [sic] client is instructed to immediately remove the roll-out carts from the City of Kenner. If Ramelli fails to do so within 24 hours from the time of your receipt of this letter, the City . . . will take the action it deems necessary to abate the health hazard and deduct the cost of such action from any monies that may be due to Ramelli. Although he was instructed to do so, Ramelli has failed to remove all roll off containers from City property. Ramelli's continued failure to do so will force the City to hire a contractor to remove and deliver Ramelli's property to Ramelli at Ramelli's cost.[23]

The following day, May 8, 2020, Plaintiffs, through counsel, responded to the City's letter and advised that

> Ramelli has been working on the logistics needed to pick up 22,000 rollout carts. It is in the process of securing a location to rent, and

---

[21] Doc. 8-13.

[22] Doc. 8-14. Despite the issuance of the TRO, the city attorney for Kenner acknowledged that, as of May 13, 2020, the City had collected and would "continue to collect" the Ramelli Janitorial rollout carts from the City's residents. Doc. 8-15 at 26.

[23] Doc. 8-15 at 8.

getting trucks and a crew, to collect and store the carts. Once the logistics are complete, we will let you know so you can provide notice to the residents as to when Ramelli will pick up its rollout carts.[24]

In the same letter, counsel for Plaintiffs offered to sell to the city Ramelli-owned rollout carts, but the City ignored the offer.[25]

Also on May 8, Mayor Zahn posted a video to Facebook.[26] The video instructed Kenner residents to place the Ramelli rollout carts on the curb as the City would begin collecting them the next day. Additionally, the Mayor stated in the video that "[i]t is sad that Orleans Parish has interfered with your safety and your welfare, but rest assured, I'm addressing this. I am not going to allow these [Ramelli] cans and trash to pile up on our Kenner streets and put you at risk."[27] Finally, Mayor Zahn issued a press release describing the Conversion Suit's TRO as a "dangerous, callous and petulant legal stunt that should have been rejected."[28] He called the Conversion Suit "juvenile and mean-spirited"[29] and classified it as "corporate revenge."[30]

On May 9, the City began seizing Ramelli Janitorial rollout carts. On that same day, Mayor Zahn posted a video to Facebook showcasing some of the Ramelli Janitorial rollout carts that were collected.[31]

On May 11, Mayor Zahn posted another video to Facebook, this time applauding a Kenner resident for his help with collecting Ramelli Janitorial rollout carts.[32] On that same day, oral argument was held in the Citizen Suit

---

[24] *Id*. at 9.
[25] Doc. 8-15 at 10 ("If the City, and/or IV Waste, needs additional rollout carts, Ramelli is willing to sell some. Please let me know if the City is interest [sic].").
[26] Doc. 8-16 (manual attachment).
[27] *Id*.
[28] Doc. 8-2 at 82.
[29] *Id*.
[30] *Id*.
[31] Doc. 8-16 (manual attachment).
[32] *Id*.

on the citizens' motion for a preliminary injunction. The citizens argued that the City of Kenner should be enjoined from performing under the trash collection contract with IV Waste until a trial on the merits.

On May 12, 2020, Mayor Zahn posted another video to the City's Facebook featuring five members of the Kenner City Council.[33] The video highlighted the numerous Ramelli Janitorial rollout carts that the City collected, asking residents to be patient with the remaining rollout cart removal.

Counsel for Plaintiffs informed the Kenner city attorney via email on May 12 that Ramelli Janitorial finalized the necessary arrangements for picking up its rollout carts and would begin pick up the following day, May 13.[34] Less than an hour after this email, Kenner Code Enforcement Officers personally served Mr. Ramelli at his office in Orleans Parish with two citations for 22,000 litter violations.[35] The citations ordered Plaintiff to appear in the Mayor's Court on June 5, 2020. Later that day, Mayor Zahn issued a press release that stated, "In response to the failure by Ramelli Waste owner Bob Ramelli to remove his company's trash containers throughout the city, the company has been issued a summons in Kenner Mayor's Court for 22,000 separate violations of Kenner's litter law."[36] The release quoted Mayor Zahn as saying, "No matter how Mr. Ramelli feels about losing the contract, it is inconceivable and unconscionable to take actions that could create a health hazard for anyone. I will not tolerate any city contractor treating the residents of Kenner in this way."[37] Torres then posted a link to the press release on his

---

[33] *Id.*
[34] Doc. 8-15 at 16.
[35] Doc. 8-2 at 84.
[36] *Id.* at 85.
[37] *Id.*

Facebook page with a caption that says, "Ramelli Waste now owes $500 a home & $11 million in fines. You should have just picked up your cans, Bobby!"[38]

On the evening of May 12, 2020, counsel for Plaintiffs emailed the city attorney demanding that the litter citations against Mr. Ramelli be withdrawn.[39]

On May 13, 2020, the city attorney replied, stating that

Ramelli's failure to do anything concerning the rollout carts, except for filing for a TRO in New Orleans, constitutes abandoning the property on the City right of ways thereby causing litter and a health hazard. Ramelli needs to make arrangements to retrieve the roll out carts the City has collected so far and will continue to collect, and to provide the City with a detailed plan and timeline for the retrieval of the remaining roll of [sic] carts that are located within the City.[40]

Pursuant to the May 12, 2020 email from Plaintiffs' counsel advising the city attorney that arrangements for picking up the rollout carts had been finalized, Ramelli Janitorial set out on May 13, 2020 to begin to collect its rollout carts.[41] Plaintiffs quickly realized, however, that 90% of the Ramelli Janitorial garbage rollout carts were filled with garbage.[42] Because Plaintiffs had been specifically instructed by the city attorney to cease all municipal solid waste collection activities in Kenner, Plaintiffs were unable to collect most of the Ramelli Janitorial rollout carts. Counsel for Plaintiffs notified the City of the conundrum on the same day and offered to dispose of the garbage in the

---

[38] *Id*. at 86.
[39] Doc. 8-15 at 22.
[40] *Id*. at 26.
[41] *Id*. at 19.
[42] *Id*.

Ramelli rollout carts for its hourly rate.[43] The City never responded to this offer.[44]

On May 17, 2020, Mayor Zahn did an interview with WDSU News, where he blamed the trash piling up on the streets of Kenner on "Bob Ramelli, Ramelli Waste, and also an Orleans Parish Court judge."[45] Mayor Zahn also said, "I ask every resident out there, when you get irritated with the City of Kenner, just put on top of those garbage cans Bob Ramelli's face, or an Orleans Parish court judge face; that's why those cans are sitting out there."[46]

On May 18, 2020, the state court in the Citizen Suit granted the citizens' request for a preliminary injunction.[47] The court enjoined the City of Kenner from performing under the contract with IV Waste until the trial on the merits.[48]

On May 19, 2020, Plaintiffs filed the instant action in this Court.[49]

On May 21, the Ramelli plaintiffs in the state court Conversion Suit filed a motion for contempt and a motion for a preliminary injunction against IV Waste, asserting that IV Waste defied the May 7, 2020 TRO by continuing to access and pick up Ramelli Janitorial rollout carts—both the trash in the rollout carts and the rollout carts themselves.[50] The state court took the motion for contempt under advisement and granted the request for a preliminary injunction against IV Waste.[51]

---

[43] Doc. 8-15 at 19 ("If the City wants Ramelli to dump the garbage from its rollout carts, Ramelli's rate for such work is $225/hour per truck. Please let me know if the City wants to retain Ramelli to dispose of the garbage contained in the Ramelli rollout carts.").

[44] *See* Doc. 8-15.

[45] Doc. 8-16 (manual attachment).

[46] *Id.*

[47] Doc. 8-9.

[48] Doc. 8-10 at 10.

[49] Doc. 1.

[50] Doc. 8-2 at 4.

[51] *Id.*

On May 23, 2020, Kenner finished collecting Ramelli Janitorial rollout carts from around the City.[52]

On June 1, 2020, Plaintiffs in the instant matter filed a Motion for a Temporary Restraining Order and a Request for a Preliminary Injunction.[53] Plaintiffs requested a TRO prohibiting Defendants from compelling Mr. Ramelli to participate in the June 5, 2020 Mayor's Court hearing for his 22,000 purported litter violations.[54]

On June 4, 2020, this Court held a telephone status conference with the parties to discuss the Motion for a TRO.[55] Defendants represented that the June 5, 2020 Mayor's Court hearing was continued until August. Based on this representation, this Court denied the Motion for a TRO.[56]

Also, on June 4, 2020, the City Council held a meeting to debate and vote on ratification of its new contract with IV Waste.[57] The new contract was ratified by a 6-1 vote of the City Council.[58] This vote was purportedly held in accordance with the Kenner Home Rule Charter.

This Court then held a hearing on Plaintiffs' instant Motion for Preliminary Injunction on June 16, 2020.[59] Plaintiffs seek an order from this Court prohibiting Defendants from (1) enforcing the litter citations, (2) compelling Mr. Ramelli to participate in the August 2020 Mayor's Court hearing, and (3) taking any other retaliatory actions against Plaintiffs. Defendants oppose.

---

[52] Doc. 15-10.
[53] Doc. 8.
[54] *Id.*
[55] Doc. 10.
[56] Doc. 11.
[57] Doc. 17-5 at 1; Doc. 17-4 at 5.
[58] Doc. 17-5.
[59] Doc. 21.

## LEGAL STANDARD

An applicant for preliminary injunctive relief must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable harm if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest.[60] A preliminary injunction is an extraordinary remedy.[61] Accordingly, a preliminary injunction should only be granted when the party seeking it has clearly carried the burden of persuasion on all four requirements.[62] In the end, a preliminary injunction is treated as an exception rather than the rule.[63]

## LAW AND ANALYSIS

### I. *Younger* Abstention

At the outset, this Court must determine if it has jurisdiction over the matter in light of the *Younger* abstention doctrine. In *Younger v. Harris*, the Supreme Court articulated a doctrine of abstention when the exercise of federal jurisdiction would interfere with ongoing state criminal proceedings.[64] *Younger* abstention is grounded in principles of equity, comity, and federalism.[65] Three requirements must be met before *Younger* abstention is appropriate: (1) the exercise of federal jurisdiction would interfere with an ongoing state judicial proceeding; (2) the state proceeding implicates important

---

[60] Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 195–96 (5th Cir. 2003).
[61] Miss. Power & Light Co. v. United Gas Pipe Line, Co., 760 F.2d 618, 621 (5th Cir. 1985).
[62] *Id.*
[63] State of Tex. v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975).
[64] 401 U.S. 37, 91 (1971).
[65] *Id.* at 43–44.

state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional challenges.[66]

This Court finds that all three requirements of *Younger* are met. First, it is not disputed that there is an ongoing state proceeding and that an exercise of this Court's federal jurisdiction would interfere with that ongoing proceeding. Second, the pending state proceeding in the Mayor's Court of Kenner implicates important state interests. The Mayor's Court proceeding is based on alleged violations of city ordinances for littering, and cities have an interest in enforcing their municipal ordinances and codes.[67]

Finally, the state proceeding affords Mr. Ramelli an adequate opportunity to raise constitutional challenges. Plaintiffs argue that the Mayor's Court lacks jurisdiction to grant the injunctive relief they seek and that, as a result, they are not provided with an "adequate opportunity" to raise constitutional challenges in the Mayor's Court hearing. Plaintiffs misapprehend the "adequate opportunity" requirement.[68] The issue is not whether the state proceeding can issue an injunction, or more broadly, whether the state proceeding can issue the specific type of relief that a plaintiff may seek, but rather, whether a plaintiff has the opportunity to raise constitutional concerns in the state proceeding:

> If state law bars consideration of the federal issues in the state proceeding, the federal court should not abstain. Alternatively, if the federal issues can be raised in the state proceeding, the failure

---

[66] *See* Bice v. La. Pub. Def. Bd., 677 F.3d 712, 716 (5th Cir. 2012) (citations omitted).

[67] "The state has a strong interest in enforcing its criminal laws." DeSpain v. Johnston, 731 F.2d 1171, 1176 (5th Cir. 1984). Moreover, even in state civil proceedings, "[a] federal court should abstain in cases in which the state is a party and the proceeding is in aid of and closely related to criminal statutes." *Id.* at 1177 (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 605 (1975)) (internal quotation marks omitted).

[68] "All that is required in order for *Younger* . . . to apply . . . [is] an opportunity to fairly pursue [the] constitutional claims in the ongoing state proceeding." *Id.* at 1180 (citing Juidice v. Vail, 1977, 430 U.S. 327, 337 (1977)) (brackets in original).

> to abstain would disrupt suits brought by the state and would reflect negatively on the ability of the state courts. The federal court therefore must ascertain whether the state law imposes a "barrier to the assertion of constitutional issues" in the state proceeding. To overcome the presumption in favor of abstention, the federal plaintiff must show that he ha[s] no opportunity to litigate the federal issue in state court.[69]

Here, Plaintiffs have failed to show that Mr. Ramelli will have no opportunity to raise and litigate his federal constitutional concerns in the Mayor's Court hearing. Plaintiffs instead focus on the Mayor's Court's purported inability to issue an injunction.

Defendants note that nothing prohibits Plaintiffs from raising their constitutional concerns, and Plaintiffs provide this Court with no evidence of such a prohibition. Defendants noted orally that Plaintiffs can raise their constitutional concerns in the Mayor's Court in the form of motions practice, such as a motion to dismiss. Moreover, in briefing, Defendants noted that Plaintiffs can appeal any verdict rendered against Mr. Ramelli to the 24th Judicial District Court for the Parish of Jefferson and the Louisiana Fifth Circuit Court of Appeal. Defendants correctly note that any appeal from a Mayor's Court judgment results in a trial de novo at the district court.[70] Indeed, counsel for Defendants stipulated on the record at the hearing for the preliminary injunction that no action would be taken on any potential Mayor's Court judgment regarding Mr. Ramelli until the appeal is resolved. Accordingly, the Court finds that the third prong of *Younger* is satisfied.

If these requirements are met, then a federal court may enjoin a pending state criminal court proceeding only if certain narrow exceptions to the abstention doctrine apply. Specifically, courts may disregard the *Younger*

---

[69] *Id*. at 1178 (internal citations omitted).
[70] Doc. 25-2 at 2 (citing LA. REV. STAT. § 13:1896).

doctrine when: (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) application of the doctrine was waived.[71] Here, Plaintiffs argue that the state court proceeding was brought in bad faith and with the specific purpose of harassment in response to the numerous suits brought by Plaintiffs and Kenner residents against Defendants and IV Waste. In *Wilson v. Thompson*, the Fifth Circuit laid out the test for the bad faith *Younger* exception:

> [T]he proper test to be applied in the context of a suit to enjoin a criminal prosecution allegedly brought in retaliation for or to deter the exercise of constitutionally protected rights is as follows: The Court should consider whether the plaintiffs have shown, first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and, second, that the State's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for or to deter that conduct. If the Court concludes that the plaintiffs have successfully discharged their burden of proof on both of these issues, it should then consider a third: whether the State has shown by a preponderance of the evidence that it would have reached the same decision as to whether to prosecute even had the impermissible purpose not been considered.[72]

Here, the first prong of the *Wilson* bad faith test is easily met. Plaintiffs aver that the ongoing criminal proceeding against Mr. Ramelli was brought in retaliation for the filing of the various lawsuits by Plaintiffs and Kenner residents in state court against Defendants and IV Waste. "It is by now well established that access to the courts is protected by the First Amendment right

---

[71] *Younger*, 401 U.S. at 49; Trainor v. Hernandez, 431 U.S. 434, 446 (1977); *DeSpain*, 731 F.2d at 1180.

[72] Wilson v. Thompson, 593 F.2d 1375, 1387 (5th Cir. 1979).

to petition for redress of grievances."[73] Plaintiffs have shown, therefore, that the conduct allegedly being retaliated against is constitutionally protected.

The second prong of the *Wilson* bad faith test is also satisfied. "In stating that the plaintiff must prove retaliation exists before a preliminary injunction will be granted, the *Wilson* Court contemplated that the plaintiff must prove retaliation was a major motivating factor and played a prominent role in the decision to prosecute."[74]

Here, the words of the Defendants and the timeline provide the necessary showing of retaliation. At the time that Mr. Ramelli was charged with these 22,000 litter violations, three separate suits were pending in state courts that centered on the trash collection dispute.  Namely, the Citizen Suit, the Breach of Contract Suit, and the Conversion Suit. As a result of preliminary rulings issued in these proceedings, IV Waste was enjoined from interfering with the rollout carts belonging to Ramelli Janitorial. Indeed, the City and the Mayor found themselves in the very unfortunate predicament where IV Waste had not yet delivered sufficient rollout carts to Kenner residents to service the city, and IV Waste was enjoined from using the property of Ramelli Janitorial. Moreover, the City ignored Ramelli's offers (1) to collect trash in the rollout carts for a fee and/or (2) to sell to the City Ramelli-owned rollout carts. In sum, trash in the city of Kenner was not being collected.

As stated earlier, this analysis turns on the timeline.  On May 7, the TRO was issued in the Conversion Suit against IV Waste prohibiting IV Waste from accessing Ramelli rollout carts. On that same day, the City advised Ramelli Janitorial that "[t]he City of Kenner has been advised that Ramelli has filed for and received a temporary restraining order prohibiting IV Waste from

---

[73] *Id*. (citing NAACP v. Button, 371 U.S. 415, 429–30 (1962)).
[74] Smith v. Hightower, 693 F.2d 359, 367 (5th Cir. 1982).

picking up garbage that is accumulating in the City of Kenner in cans that belong to Ramelli. . . . [Y]ou [sic] client is instructed to immediately remove the roll-out carts from the City of Kenner. If Ramelli fails to do so within 24 hours from the time of your receipt of this letter, the City . . . will take the action it deems necessary to abate the health hazard."[75]

On the following day, Plaintiffs informed the city that it was finalizing the necessary logistics to collect the rollout carts that would soon become the subject of the litter violations and that the city would be informed as soon as the arrangements were completed.[76]

On May 12, Plaintiffs advised the City that arrangements had been made to begin the collection of their rollout carts. Within hours, these citations were issued.  In conjunction with the citations, the Mayor issued the following statement: "No matter how Mr. Ramelli feels about losing the contract[77] it is inconceivable and unconscionable *to take actions* that could create a health hazard for anyone. I will not tolerate any city contractor treating the residents of Kenner in this way."[78]  Here, the Court emphasizes the words "to take actions."  A meticulous review of the record by this Court reveals that the only actions taken by Ramelli Janitorial were the constitutionally protected filings in various courts. Indeed, the city attorney conceded in an email to Plaintiffs' counsel that the 22,000 litter violations arose from "Ramelli's failure to do

---

[75] Doc. 8-15 at 8.

[76] The Court does find it curious that IV Waste anticipated that it would need several weeks to distribute its rollout carts to the citizens of Kenner, but the City believed that Ramelli Janitorial should be able to manage the retrieval of the rollout carts within a 24-hour period.

[77] Again, the Court finds the wording curious, as the City has repeatedly taken the position that the Contract was not cancelled.

[78] Doc. 8-2 at 85 (emphasis added).

anything concerning the rollout carts, *except for filing a TRO in New Orleans*."[79]

The facts of this case resemble a blueprint for a retaliatory, bad faith prosecution. "That which looks like a duck, walks like a duck, and quacks like a duck, will be treated as a duck even though some would insist upon calling it a chicken."[80] Accordingly, Plaintiffs have discharged their burden of demonstrating that retaliation was a "major motivating factor and played a prominent role in the decision to prosecute."[81]

The last prong for the bad faith *Younger* exception asks whether the State has shown by a preponderance of the evidence that it would have reached the same decision to prosecute even had the retaliatory purpose not been considered. "Relevant to this [third] determination would be such factors as whether the State prosecution was undertaken with no hope of a valid conviction and the significance of the alleged criminal activity."[82] This Court finds that the Defendants have failed to satisfy their burden of showing by a preponderance of the evidence that the City would have reached the same decision to prosecute Mr. Ramelli without the retaliatory motivation.

Indeed, the facts of the case make it clear that the City could not hope for a valid conviction on the 22,000 separate criminal charges against Mr. Ramelli. First, Mr. Ramelli was personally cited with the litter violations, but Mr. Ramelli does not own the rollout carts that constitute the litter violations— Ramelli Janitorial does. Second, the two citations list Ordinance Number 1427,

---

[79] Doc. 8-15 at 26 (emphasis added).

[80] Quave v. Progress Marine, 912 F.2d 798, 800 n.4 (5th Cir. 1990) (quoting Tidelands Marine Serv. v. Patterson, 719 F.2d 126, 128 n.3 (5th Cir. 1983)).

[81] *Smith*, 693 F.2d at 367.

[82] *Wilson*, 593 F.2d at 1387 n.22 (citing Perez v. Ledesma, 401 U.S. 82, 85 (1971); Duncan v. Perez, 445 F.2d 557, 560 (5th Cir. 1971), *cert. denied*, 404 U.S. 940) (internal citations omitted).

§ 7-171(g), relative to litter, at the location of "all of Kenner, 22,000 cases," as the purported criminal violation. As Plaintiffs point out, however, § 7-171(g) prohibits "any property owner, his lessee, agent, or employee to knowingly permit the scattering or dumping of refuse, garbage, trash, or litter on any property over which he has ownership or control."[83] Mr. Ramelli certainly does not have ownership or control over "all of Kenner, 22,000 cases."

The second consideration, the significance of the alleged criminal activity, also speaks to the bad faith nature of this prosecution. While littering is relatively insignificant criminal activity, Mr. Ramelli was criminally charged with *22,000* separate violations of littering. As Plaintiffs note, the litter ordinance imposes a fine of $200 to $500 per day, per violation, and carries penalties of thirty to sixty days of imprisonment per violation. As a result, Mr. Ramelli faces fines of $4 million to $11 million and a sentence of more than 3,600 years—for allegedly littering. Thus, while the alleged criminal activity is relatively insignificant, it is an understatement to say that the charges facing Mr. Ramelli are significant. Accordingly, considering the significance of the charges and the ability of Defendants to obtain a valid conviction, the City has not established that it would have pursued criminal charges against Mr. Ramelli without the Defendants' retaliatory purpose.

This Court, therefore, finds that the bad faith exception to *Younger* abstention is satisfied. Accordingly, the Court may properly entertain the Motion for Preliminary Injunction. The Court now turns to the merits.

## II.    Preliminary Injunction

A successful applicant for a preliminary injunction must demonstrate four elements: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable harm if the injunction is

---

[83] Doc. 8-12 at 3.

not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest.[84]

### A. Substantial Likelihood of Success on the Merits

To determine whether a plaintiff has shown a substantial likelihood of success on the merits, courts must turn to the law underlying the plaintiff's claim for injunctive relief.[85] Here, Plaintiffs bring a claim against Defendants under 42 U.S.C. § 1983 for violating Plaintiffs' First Amendment right to petition the government for a redress of grievances. Section 1983 provides a private right of action to any person who is deprived of a federal constitutional or statutory right by a person acting under color of state law.[86] "To state a claim under section 1983, a plaintiff must show: (1) that the defendant deprived him of a right secured by the Constitution or federal law; and (2) that the deprivation occurred under color of state law."[87]

Here, Plaintiffs have a substantial likelihood of succeeding on the merits. Access to the courts is protected by the First Amendment right to petition for redress of grievances.[88] The First Amendment, therefore, "prohibits government officials from retaliating against individuals for engaging in protected speech."[89] Plaintiffs have presented substantial evidence that Defendants issued the two litter citations as retaliation for Plaintiffs' numerous civil suits against them and their contracted trash collection company, IV Waste. Moreover, this deprivation occurred under color of state

---

[84] *Lake Charles Diesel, Inc.*, 328 F.3d at 195–96.

[85] Lambert v. Bd. of Comm'rs of Orleans Levee Dist., No. CV 05-5931, 2006 WL 8456316, at *8 (E.D. La. Mar. 22, 2006).

[86] *See* 42 U.S.C. § 1983.

[87] *Lambert*, 2006 WL 8456316, at *8 (citing Cornish v. Corr. Serv. Corp., 402 F.3d 545, 549 (5th Cir. 2005)).

[88] *Wilson*, 593 F.2d at 1387 (citing *Button*, 371 U.S. at 429–30).

[89] Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1949 (2018).

19

law. "The critical inquiry on this question is whether alleged infringement of federal rights [can be] fairly attributable to the State."[90] The litter citations were issued by the City of Kenner for purported violations of city ordinances. It is not disputed that the issuance of the citations, therefore, occurred under color of state law.

## B. Substantial Threat of Irreparable Harm

"[I]rreparable injury is sufficiently established if the federal plaintiff demonstrates that the state prosecution against him was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights."[91] This Court has already found through the *Younger* bad faith exception analysis that the litter citations were brought against Mr. Ramelli as retaliation for the exercise of Plaintiffs' First Amendment rights. Accordingly, this element is satisfied.

## C. Threatened Injury Outweighs Threat of Harm in Granting Injunction

Here, the threatened injury to Plaintiffs is two-fold: first, a deprivation of their First Amendment rights, but second, a potential sentence of thousands of years in prison and millions of dollars in fines for Mr. Ramelli. The threatened harm to Defendants from granting the preliminary injunction, however, is minimal. Defendants simply would be prohibited from compelling Mr. Ramelli to appear at the August Mayor's Court hearing and from enforcing the litter citations until a trial on the merits. Considering the fact that Defendants collected all of the Ramelli Janitorial rollout carts from the City by May 23, 2020, there is not even a threat of harm to Defendants from unabated

---

[90] *Lambert*, 2006 WL 8456316, at *9 (citing *Cornish*, 402 F.3d at 549) (quotations omitted; brackets in original).
[91] *Wilson*, 593 F.2d at 1383.

littering. Accordingly, the threatened injury faced by Plaintiffs substantially outweighs any potential harm caused by granting a preliminary injunction.

### D. Granting will not Disserve the Public Interest

Finally, granting this preliminary injunction will not disserve the public interest. "Injunctions protecting First Amendment freedoms are always in the public interest."[92] Defendants make no argument to the contrary. Accordingly, this Court finds that all four requirements for a preliminary injunction have been met.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction (Doc. 8) is **GRANTED**. Defendants are hereby **ENJOINED** from enforcing the two litter citations against Mr. Ramelli and from compelling Mr. Ramelli to participate in the August 2020 Mayor's Court hearing on the citations. This Preliminary Injunction shall remain in place until a trial on the merits.

New Orleans, Louisiana this 14th day of July, 2020.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[92] Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 298 (5th Cir. 2012) (quoting Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006)) (brackets omitted).